O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THAN MIN,<br><br>Petitioner,<br>v.<br><br>ERNESTO SANTACRUZ JR. et al.,<br><br>Respondents. | Case No.: 2:25-cv-10971-MEMF-AS<br><br>**ORDER GRANTING IN PART PETITIONER'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [DKT. NO. 8]** |

Before the Court is the Ex Parte Application for Temporary Restraining Order and Preliminary Injunction filed by Petitioner Than Min. Dkt. No. 8 ("Application"). For the reasons stated herein, the Motion is **GRANTED IN PART**.

/ / /

/ / /

/ / /

/ / /

1

I. **Background**

A. **Factual Background**[1]

In or around May 1983, Min entered the United States from Thailand. Min Decl. ¶ 1. Min was a refugee from the Khmer Rouge regime in Cambodia. *Id.* At the time, Min was nine or ten years old. *Id.* He has never left the United States. *See generally id.* In 1986, Min became a lawful permanent resident. *Id.* ¶ 1.

In 1995, Min pled guilty and was convicted to attempted robbery and false imprisonment, which resulted in a six years and four months prison sentence. *Id.* ¶ 2. After being released from prison, Min was transferred to immigration detention in Eloy, Arizona. *Id.* ¶ 3. He was placed in removal proceedings on May 10, 2001. *Id.* ¶ 4. On August 28, 2001, an Eloy immigration judge ordered Min's removal. *Id.* On December 21, 2001, Min was released from immigration custody under an order of supervision. *Id.*

In 2006, Min married his wife, a U.S. citizen. *Id.* ¶5. He and his wife have three children. *Id.*

Before 2025, Min complied with his immigration check-ins, which occurred once or twice a year. *Id.* ¶ 7. In 2025, Min was required to check-in once a month and fully complied with his check-ins. *Id.*

On October 21, 2025, Min received a letter from Immigration and Customs Enforcement ("ICE"), informing him that he would be re-detained at his next check-in scheduled to be in fourteen days. *Id.* The letter did not identify any changed circumstances or provide any individualized basis for believing that removal had become significantly likely in the reasonably foreseeable future. Application at 3. Prior to his November 15, 2025 check-in, Min worked with immigration counsel to address his underlying convictions and filed a motion to reopen his removal proceedings and an emergency motion for stay of removal with the Eloy Immigration Court. *Id.*

---

[1] Unless otherwise indicated, the following factual background is derived from the Declaration of Than Min. Dkt. No. 8-3 ("Min Decl."). This Court is not, at this time, making a final determination as to the veracity of the facts stated therein.

2

On November 15, 2025, Min reported to his check-in at ICE facility with his counsel and wife and was re-detained. Min Decl. ¶¶ 8-9. When Min's counsel requested a contemporaneous written notice, ICE officers stated no such notice was available and that notice would be provided after Min's detention. Application at 4. When Min's counsel asked whether travel documents were available to effectuate Min's removal to Cambodia, ICE officers stated they did not have them and would make Min request them after he was taken into custody. *Id.*

Following re-detention, Min was held in the basement of 300 N. Los Angeles Federal Building. *Id.* He was later transferred to the Adelanto ICE Processing Center. *Id.*

### B. Procedural History

On November 14, 2025, Min filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 in this matter. Dkt. No. 1. On November 20, 2025, Min filed an Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. Dkt. No. 5. On the same day, Min filed the instant Ex Parte Application for Temporary Restraining Order and Preliminary Injunction. Application. Min emailed ECF-stamped courtesy copies of the Application to Respondents on November 20, 2025. Dkt. No. 10-1. On November 20, 2025, the Court ordered the Respondents to file a response to the Application by November 24, 2025, at 5pm. Dkt. No. 9. The Respondents did not file a response. On November 25, 2025, Min filed a Notice of Non-receipt of Opposition. Dkt. No. 10.

## II. <u>Applicable Law</u>

### A. Preliminary Injunctions

The analysis that courts must perform for temporary restraining orders and preliminary injunctions is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 (9th Cir. 2001). Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To qualify for injunctive relief, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. This Court cannot grant the

preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Ninth Circuit has held that injunctive relief may issue, even if the moving party cannot show a likelihood of success on the merits, if "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.").

### B. Habeas Petitions in the Immigration Detention Context

District Courts are "generally prohibit[ed]" from "entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA, found in 8 U.S.C. §§ 1221–1232. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). But "lower courts retain the authority to 'enjoin or restrain the operation of' the relevant statutory provisions 'with respect to the application of such provisions to an individual [noncitizen] against whom proceedings under such part have been initiated.' *Id.* (quoting 8 U.S.C. § 1252(f)(1)). This Court, therefore, may grant relief in "individual cases." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court established that courts should treat a six-month period of detention as "presumptively reasonable." *Id.* at 700–01. It explained:

> After this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Respondents must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every [noncitizen] not removed must be released after six months. To the contrary, a [noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701. In other words, trial courts considering an immigration detainee's habeas petition seeking release must first ascertain if the detainee has demonstrated good reason to believe that, in the reasonably foreseeable future, there is no significant likelihood of removal. Only then does the burden shift to the Respondents to rebut that showing.

     A different framework applies, however, once an immigrant has been "released under an order of supervision." 8 U.S.C. § 241.13(i)(1). To "revoke an [noncitizen]'s release under this section and return the [noncitizen] to custody," the Service must "determine[] that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release," and is entitled to an initial interview after the immigrant's return to custody to allow the immigrant to respond, submit evidence, or otherwise demonstrate that "there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(3).

### III.   Discussion

#### A.  Min's Application is procedurally proper.

     As a threshold matter, Min's Application is procedurally proper.

     Local Rule 7-19.1 mandates that ex parte applications include the contact information for the opposing party, as well as a declaration of the movant's efforts to contact other counsel. L.R. 7-19.1.

     Min's Application lists the Respondents' counsel's telephone number, fax number, and email address. Application at 2. Attached to the Application, is a Min's counsel's, Brynna Bolt, declaration, stating that Bolt "contacted counsel for Respondents by phone and orally provided an overview of the ex parte application." Dkt. No. 8-2 at 2 ("Bolt Decl."). The Respondents' counsel stated the Respondents would oppose the Application. On the same day Min filed the Application, Min emailed ECF-stamped courtesy copies of the Application to Respondents, thereby properly serving Respondents. Dkt. No. 10-1. For these reasons, this Court finds that Min complied with Local Rule 7-19.1. Therefore, Min's Application appears to be in compliance with the Local Rules.

     Accordingly, the Court finds the Application is procedurally proper and will next turn to the merits of the Application.

### B. Applying the *Winter* factors, Min is entitled to a temporary restraining order.

As discussed above, the standard for granting a temporary restraining order and a preliminary injunction are substantively identical. Given the urgency of this matter, this Court has only considered whether Min is entitled to a temporary restraining order. Having determined below that he is entitled to a temporary restraining order, the Court will issue an order to show cause as to why a preliminary injunction should issue, which should permit further development of the record and additional briefing.

The Petition advances two grounds upon which a temporary restraining order should be granted. First, Min argues that ICE unequivocally failed to provide notice or demonstrate any efforts to effectuate his removal to Cambodia—violation of 8 U.S.C. § 241.13(i)(2)-(3). Application at 8-9. Second, Min asserts that the Respondents violated his constitutional due process rights by failing to provide him an opportunity to be heard prior to his re-detention. *Id.* at 9.

The Court addresses these grounds below.

> i. <u>The first *Winter* factor, likelihood of success on the merits, is met with respect to both grounds.</u>
>
>> 1. *Min was re-detained without notice and there is no evidence that his removal to Cambodia is in the reasonably foreseeable future.*

On his first ground, Min argues that Respondents violated Section 241.13(i)(3) when revoking Min's supervised release and subsequently re-detaining him without providing a "contemporaneous written notice stating the reasons for revocation." Application at 8. Aside from the October 21, 2025 letter announcing Respondents' intention to re-detain Min, no written notice was provided that set forth a change of circumstances or a factual basis that Min's removal "had become significantly likely in the reasonably foreseeable future." § 241.13(i)(3); Application at 8. Importantly, Min's counsel requested written notice and evidence of efforts to effectuate Min's removal at Min's November 15, 2025 check-in. *Id.* at 4, 8. As to written notice, ICE officers stated notice was not "available and that any notice would come after detention." *Id.* at 8. As to efforts effectuating removal, ICE officers stated, "they did not have them" and would "would make Min" request travel documents "after taking Min into custody." *Id.* at 4.

In *Zadvydas*, the Supreme Court established that a six-month period of detention was presumptively reasonable. 533 U.S. at 701. Thus, in order to demonstrate a likelihood of success on the merits, Min has to indicate that there is good reason to believe that there is no likelihood of removal in the near future. *Id.* However, because Min is an immigrant released under an order of supervision, Section 241.13 governs codifies how *Zadvydas* should apply:

> This section establishes special review procedures for those [noncitizens] who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, *where the [noncitizen] has provided <u>good reason to believe</u> there is no significant likelihood of removal to the country to which he or she was ordered removed* . . . in the reasonably foreseeable future.

8 U.S.C. § 241.13(a) (emphasis added).[2] This therefore indicates that the subsection Min relies upon—241.13(i)(2)-(3)—only applies where the noncitizen has made the showing of "good reason to believe there is no significant likelihood of removal." And this mirrors *Zadvydas*: "[a]fter [the] 6-month period, once the [non-citizen] provides *good reason to believe* that there is no significant likelihood of removal in the reasonably foreseeable future, the Respondents must respond with evidence sufficient to rebut that showing." 533 U.S. at 701.

Min has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Under Section 241.13(i)(2), Respondents bear the burden to establish that there is a significant likelihood that Min may be removed in the reasonably foreseeable future. As admitted by the ICE officers, no efforts have been taken to effectuate his removal to Cambodia or any third country. No travel documents have been applied for, let alone secured. And Respondents have not presented evidence substantiating any efforts in the near future to process Min's removal. Without any factual detail of removal efforts, the Court is unable to conclude that it

---

[2] Where it does not change the meaning, this Court will endeavor to use the term "noncitizen" in place of alien, consistent with the practice of the United States Supreme Court. *See Avilez v. Garland*, 69 F.4th 525, 527 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' *Alien, Webster's Third New International Dictionary* 53 (2002), while the word noncitizen, which is synonymous, *see Alien* and *Noncitizen, American Heritage Dictionary of English Language* 44, 1198 (5th ed. 2011), avoids such connotations. Thus, noncitizen seems the better choice.").

is at all likely that the Respondents will be able to remove Min in the reasonably foreseeable future. The Court therefore finds that Min is likely to succeed on showing that Respondents have not met their burden of proof.

This Court thus finds that Min has demonstrated the likelihood of success on the merits of the question of whether his detention is unlawful under *Zadvydas*.

>       2.   *Min has demonstrated a likelihood of success on the merits of his claim that his detention is unlawful because Respondents violated his constitutional due process rights.*

This Court next turns to Min's second ground. Min argues that he is entitled to release because Respondents failed to "provide [Min] a hearing prior to re-detention"—in violation of his constitutional due process rights. Application at 9. For the reasons below, this Court finds he is likely to succeed on the merits of this claim.

"'The Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Accordingly, immigration detainees pending removal are "entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

In light of *J.G.G.*, it appears that the applicable regulations, namely 8 U.S.C. § 241.13(i)(3) and 8 U.S.C. § 241.4(*l*)(1) are the means by which ICE has determined it will meet the due process rights of putative detainees. The Respondents provide no reason that this Court should find otherwise, and this Court declines to take the extraordinary position that these individuals are not entitled to notice and an opportunity to be heard in the absence of clear direction—in binding law, in the relevant statutes, or in the applicable regulations—to that effect. This Court therefore finds that Ma is likely to succeed on the merits of his claim that detention is only permitted upon notice and an opportunity to be heard.

This Court's conclusion is consistent with that of other district courts. (collecting cases). Particularly instructive is the Court's approach in *McSweeney v. Warden of the Otay Mesa Det. Facil.*, No. 3:25-CV-02488-RBM-DEB, 2025 WL 2998376 (S.D. Cal. Oct. 24, 2025). There, the

Court found that a detention which did not properly notify the petitioner of the reasons for revocation of release, or grant him an interview to allow him to respond to the reasons for revocation, violated the petitioner's due process rights. *Id.* at *5–7. In *McSweeney*, it appears that the petitioner had received more notice than Min has in this case; there, the petitioner was sent a notice of the reasons for revocation of his release. *Id.* at *6. Still, because there was no interview opportunity following that notice, the Court found that the procedural deficiencies rose to the level of procedural due process violations. *Id.* In its words, "Petitioner could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons." *Id.*

Today, the Court must determine whether Min is likely to eventually prevail on the merits. For the reasons described above, this Court finds that he is likely to succeed on the merits under both of Min's arguments for habeas relief. In sum, the first *Winter* factor is met here under both of Min's arguments for habeas relief.

The second *Winter* factor, a demonstrated likelihood of irreparable harm absent an injunction, is met.

To establish the second *Winter* requirement, Min must demonstrate a likelihood that he will suffer irreparable harm without a temporary restraining order. This Court finds that he has done so.

As a threshold matter, Min has "established a likelihood of irreparable harm by virtue of the fact that [he is] likely to be unconstitutionally detained for an indeterminate period of time." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Respondents have provided no evidence that Min's detention will not be prolonged or that Min's removal is likely to occur in the reasonably foreseeable future. Application at 4, 8. Further, Respondents have failed to comply with the legal process that is due to him as a detained noncitizen. *Id.* at 9; *J. G. G.*, 604 U.S. at 673. And "it is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Min's ongoing detention of indeterminate length—which may lead to a deportation sometime in the future to an undetermined country—inherently risks him irreparable harm, as it is not clear when he will be processed, released, or removed. Min's harm is compounded

by his separation from his family, who face economic hardship, as well as Min's neglected medical needs,[3] as a result of his detention. Application at 15; *Andreiu v. Ashcroft*, 253 F.3d 477, 484 (9th Cir.2001). Thus, as this Court has already found that Min has a sufficient likelihood of success on the merits of both of his challenges to his current detention—one of which has a basis in Min constitutional rights—this Court finds the second *Winter* factor is met.[4]

      ii.  <u>The third and fourth *Winter* factors, balancing the equities and considering the public interest, are met.</u>

When, as here, the nonmoving party is a Respondents entity, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court then considers the third and fourth factors—whether the "balance of equities" is in Min's favor and whether an injunction is in the public interest—jointly. *All. for the Wild Rockies*, 632 F.3d at 1135.

The balance of equities does appear to tilt strongly in Min's favor. Min concedes that there a public interest to minimize individuals who pose flights risks or are a danger to the community. Application at 13. But Min emphasizes that ICE previously determined that Min is not a flight risk in December 2001, and Min has not committed any crime since that determination. *Id.*; Dkt. No. 8-7. As discussed, Respondents did not file a response. Despite the lack of a response, the Court recognizes that they have a strong interest in the enforcement of federal immigration law. However, the Respondents have failed to comply with binding authorities, resulting in the violation of Min's constitutional rights against unlawful detainment. *Id.* at 12. "'[I]t is clear that it would not be equitable or in the public's interest to allow the [Respondents] . . . to violate the requirements of federal law, especially when there are no adequate remedies available.'" *Valle Del Sol Inc. v.*

---

[3] Min suffers from diabetes and faces nutritionally inadequate meals while detaine1d. Application at 3.

[4] Min also argues that he would "face irreparable harm if removed to a third country." Application at 16. It is well settled that "speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). And, as noted in the Application, there is no evidence that Respondents have effectuated any efforts to remove Min to a third country. Application at 8. The Application appears to concede the uncertainty in his premise of third-party country removal. Application at 16 ("Min would also face irreparable harm if removed to a third country."). The record, as it stands, indicates that the possibility of removal to a third country is speculative, and therefore Min cannot show the requisite likelihood of irreparable harm (the second *Winter* factor). Thus, Min is not entitled to a temporary restraining order on this ground.

*Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013); Application at 17-18. Given Min's unlawful detention, and without any reason to believe Min's removal or release will occur in the reasonably foreseeable future, the Court finds ample reason to conclude that "the balance of hardships tips decidedly in plaintiffs' favor." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). And, for related reasons, an injunction is in the public interest. "Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). In sum, the third and fourth *Winter* factors are met here.

## IV.   **Conclusion**

For the foregoing reasons, the Court hereby ORDERS that Min's Motion for a Preliminary Injunction and Temporary Restraining Order is GRANTED IN PART. Min's request for a temporary restraining order is GRANTED. This Court will rule on the request for a preliminary injunction following the Order to Show Cause hearing described below.

1. Respondents are ORDERED to release Petitioner from custody as soon as reasonably practicable, and not re-detain him without compliance with 8 U.S.C. § 241.4(*l*)(1) and 8 U.S.C. § 241.13(i);
2. Respondents are enjoined from relocating Petitioner outside of the Central District of California pending final resolution of this matter;
3. Respondents shall show cause, in writing, as to why a preliminary injunction should not issue in this case no later than fourteen (14) days of the date of this Order. Petitioner may file a response no later than seven (7) days after Respondents' filing; and

//
//
//
//

4. The parties shall meet and confer and file a joint status report regarding the Respondents' compliance with this Order by December 3, 2025. The joint status report shall also address whether the habeas petition is moot.

IT IS SO ORDERED.

Dated:  November 26, 2025.

_____
MAAME EWUSI-MENSAH FRIMPONG
United States District Judge