O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THAN MIN,<br>Petitioner,<br>v.<br>ERNESTO SANTACRUZ JR. et al.,<br>Respondents. | Case No.: 2:25-CV-10971-MEMF-AS<br><br>**ORDER GRANTING PETITIONER'S MOTION FOR ATTORNEY FEES [DKT NO. 30]** |

Before the Court is an Unopposed Motion for Attorney's Fees filed by Petitioner Than Min. Dkt. No .30 ("Motion"). For the reasons stated herein, the Court GRANTS the Motion.

/ / /

/ / /

/ / /

## I. Background

### A. Factual Background[1]

Petitioner Than Kevin Min, Min has been a lawful permanent resident since 1986. Petition ¶ 1. Despite having more than twenty years of peaceful, documented supervision, U.S. Immigration and Customs Enforcement ("ICE") re-detained him during a routine check-in. *Id.* ¶ 2. In 1995, Min pled guilty and was convicted of attempted robbery and false imprisonment, which resulted in a six-year and four-month prison sentence. Min Decl. ¶ 2. After being released from prison, Min was transferred to immigration detention in Eloy, Arizona. *Id.* ¶ 3. He was placed in removal proceedings on May 10, 2001. *Id.* ¶ 4. On August 28, 2001, an Eloy immigration judge ordered Min's removal. *Id.* On December 21, 2001, Min was released from immigration custody under an order of supervision. *Id.*

In 2006, Min married his wife, a U.S. citizen. *Id.* ¶ 5. He and his wife have three children. *Id.* Before 2025, Min complied with his immigration check-ins, which occurred once or twice a year. *Id.* ¶ 7. Starting in 2025, Min was required to check-in once a month with the government and fully complied with his check-ins. *Id.*

On October 21, 2025, Min received a letter from Immigration and Customs Enforcement ("ICE"), informing him that he would be re-detained at his next check-in scheduled to be in fourteen days. *Id.* The letter did not identify any changed circumstances or provide any individualized basis for believing that removal had become significantly likely in the reasonably foreseeable future. Dkt. No. 8 ("Application") at 3. Prior to his November 15, 2025, check-in, Min worked with immigration to address his underlying convictions and filed a motion to reopen his removal proceedings and an emergency stay of removal with the Eloy Immigration Court. *Id.*

On November 15, 2025, Min reported to his check-in at ICE facility with his counsel and was re-detained*.* Min Decl. ¶¶ 8-9. When Min's counsel requested a contemporaneous written notice, ICE officers stated no such notice was available and that notice would be provided after Min's

---

[1] Unless otherwise indicated, the following factual background is derived from the Min's Petition, Dkt. No. 1 ("Petition"), and Min Declaration, Dkt. No. 8-3 ("Min Decl."). This Court is not, at this time, making a final determination as to veracity of the facts stated therein.

detention. Application at 4. When Min's counsel asked whether travel documents were available to effectuate Min's removal to Cambodia, ICE officers stated they did not have them and would make Min request them after he was taken into custody. *Id.*

Following re-detention, Min was held in the basement of 300 N. Los Angeles Federal Building. *Id.* He was later transferred to the Adelanto ICE Processing Center. *Id.*

**B. Procedural History**

On November 14, 2025, Min filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 in this matter. Dkt. No. 1. On November 20, 2025, Min filed an Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. Dkt. No. 5. On the same day, Min filed an Ex Parte Application for Temporary Restraining Order and Preliminary Injunction. Application. Min emailed ECF-stamped courtesy copies of the Application to Respondents November 20, 2025. Dkt. No. 10-1 ¶ 2. The Respondents did not file a response. On November 26, 2025, Min's Motion for a Preliminary Injunction and Temporary Restraining Order was granted in part. Dkt. No. 11.

On December 9, 2025, the Respondents filed a Response to Order to Show Cause of Preliminary Injunction, stating that Min had been released from custody and therefore Min's request for a preliminary injunction and habeas petition was moot. Dkt. No. 14. On December 23, 2025, the Court granted Min's request for preliminary injunction. Dkt. No. 16.

On March 9, 2026, the Magistrate Judge issued a Report and Recommendation, recommending this Court grant the First Amended Petition and Respondents be permanently enjoined and restrained from re-detaining Min without following applicable procedures. Dkt. No. 22. On April 22, 2026, the Court adopted the Report and Recommendation. Dkt. No. 26. Judgment was issued on April 22, 2026. Dkt. No. 27.

On August 4, 2026, Min filed the instant Motion. Motion. Pursuant to the Court's Civil Standing Order, Oppositions "[m]ust be filed no later than fourteen (14) days after the filing of the initial Motion." Civil Standing Order § VIII(B). To date, Respondents have not filed an Opposition.

**II. <u>Applicable Law</u>**

The Equal Access to Justice Act ("EAJA"), codified at Section 2412 of Title 28 of the United States Code allows prevailing parties in civil actions involving the United States government to

recover certain costs and attorney fees, subject to statutory conditions and limitations. Section 2412 (d)(1)(A) requires courts to award attorney fees and expenses to a prevailing party in civil actions against the federal government, unless the government's position was substantially justified or special circumstances make an award unjust. Section 2412 (d)(1)(B) sets forth that a party seeking an award must be (1) a prevailing party, (2) the United States position is not substantially justified, (3) the award may not create special circumstances which make it unjust. Procedurally, the prevailing party must submit an application for fees and other expenses within 30 days of the final judgment in the action.

The Ninth Circuit has set forth the circumstances under which attorney's fees shall be awarded under the Equal Access to Justice Act ("EAJA"). *Nadarajah v. Holder*, 569 F.3d 915, 916 (9th Cir. 2009); *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1136 (9th Cir. 2012); *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001); *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991); see also *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 603, (2001) (defining "prevailing party" under various federal statutes which, like EAJA, permit fees to prevailing party). !

## III. Discussion

Min argues that the requested attorney fees and costs—attorney fees and costs incurred in a total amount of $47,681.06 are reasonable under Ninth Circuit authorities. *See generally* Motion. Respondents have not opposed the Motion. For the reasons stated herein, Min's requested attorney fees, litigation costs, and service award are reasonable.

Having reviewed the Motion, the request for attorney fees and costs is reasonable and should be granted under the EAJA. All of the procedural requirements of Section 2412(d)(1)(B) have been met, including the submission of the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. In addition, Min has established that (1) that Min is a prevailing party and is eligible to receive an award under this subsection, and (2), Respondents' position was not substantially justified. The factors considered are discussed in more detail below.

**A. Min Is an Eligible and Prevailing Party.**

Min's Motion for Attorney's Fees is timely under 28 U.S.C. § 2412 (d)(1)(B). An eligible party includes "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed." *Id* § 2412(d)(2)(B). Here, Min declared he is a private individual whose net worth has never exceeded two million dollars. Min Decl. ¶ 2. Thus, Min is an eligible party in the case.

Further, a prevailing party is defined as "a party in whose favor a judgment is rendered, regardless of the number of damages awarded." *Buckhannon*, 532 U.S. at 603. *Buckhannon* further considered whether the judgment on the merits created a "material alteration of the parties' legal relationship." *Id.* at 598, 604-605. Here, the Court entered judgement in favor of Min on April 22, 2026, granting Min's habeas petition and determining that Respondents shall not re-detain Min without complying with applicable procedural guidelines, 8 C.F.R. §§ 241.4(1)(1) and 241.13 (i). Dkt. Nos. 26, 27. The Court's judgment thus altered the legal relationship between the parties and Min satisfies this element as a prevailing party.

**B. Min Substantiates the Requested Fees.**

Min has submitted and is seeking $47,681.06 in attorney's fees. Motion at 1. Willkie Farr & Gallagher LLP ("Willkie") and Immigrant Defenders Law Center ("ImmDef") represented Min in the action at issue pro bono, with Willkie attorneys leading the case with support of ImmDef attorneys. *Id.* Attorneys' fees are still recoverable under the EAJA despite a pro bono arrangement. *Nadarajah*, 569 F.3d at 915–16. Like the ACLU in *Nadarajah*, ImmDef is a non-profit organization dedicated to civil rights with a focus on immigrant communities, who often take clients upon pro-bono arrangements. Thus, ImmDef and Willkie's representation of Min should not preclude awarding reasonable attorneys' fees under EAJA. Additionally, Willkie, ImmDef, and Min have established an attorney client-relationship. *Id*. at 916.

As for EAJA statutory maximum rates, the Ninth Circuit establishes the current statutory maximum rate as $258.46 an hour[2]. Willkie attorneys and ImmDef attorneys submit fees at the

---

[2] Statutory Maximum Rates Under the Equal Access to Justice Act, U.S. Ct. of Appeals for the Ninth Cir., https://www.ca9.uscourts.gov/attorneys/statutorymaximum-rates/ (last visited September 4, 2026).

EAJA statutory maximum rate. Motion at 4-5; Dkt. Nos. 30-7, 30-8. Willkie attorneys have submitted two itemized statements: (1) hours worked (normal Willkie attorney hourly rates which range from $490 - $1,575 representing associates and partners), (2) a description or narrative of the work done and detailing hours worked, and (3) the statutory maximum rate provided by the EAJA. *Id*. In total, Willkie attorneys have worked approximately 201.20 hours on this matter, and have charged 157.30 attorney hours. Motion at 5 n.5; Dkt. Nos. 30-7, 30-8. Applying the statutory maximum rate of $258.46, the total Willkie fees sought is $40,681.06. *Id.* Further, Willkie attorneys explain that they have "extensive experience in litigation matters", including pro bono matters for civil rights violations and matters involving prisoners. Dkt. No. 30-6 ¶¶ 4-5.

ImmDef attorneys have submitted two itemized statements, providing the hours worked and description of the work done. Dkt. Nos. 30-4, 30-5. In total, ImmDef attorneys have worked approximately 27 hours, 10 minutes, and 53 seconds. *Id.*; Motion at 5 n.5. Applying the statutory maximum rate of $258.46, the total ImDef fees sought is $7,025.30. *Id.* Further, ImDef detail that its attorneys have "represented numerous noncitizens before the Board of Immigration Appeals and Ninth Circuit, as well as in habeas petitions before the District Courts." Motion at 5; Dkt. No. 30-3 ¶ 7.

Based on a careful review of the attorneys' declarations and exhibits, the Court has determined that using the statutory maximum rates is reasonable and proper. The itemized statements and documents substantiate the requested fees and the declarations evidence the attorneys' qualifications. Min's attorneys are not seeking money for paralegals, legal assistants, and other staff. Thus, legal staff hours are not included in the itemized statements. As such, Min satisfies this element as he has provided the amount sought with necessary documentation to support his request. 28 U.S.C. § 2412 (d)(1)(A).

**C. Respondents' Position Was Not Substantially Justified.**

Min posits that the government's position in this case was not "substantially justified." Motion at 5-6; 28 U.S.C. § 2412(d)(a)(A). A position is substantially justified if it is understood that the government bears the burden of proof that its position and underlying agency action were substantially justified. *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013). Furthermore, to deny an

award of attorneys' fees, both the government's litigation position and the underlying agency action must be substantially justified. *Id.* at 872. Additionally, for the government's position to be substantially justified it would need have a "reasonable basis both in law and fact." *Id.*

Here, this Court found that the custody determination by the government was not reasonable for a myriad of reasons, including that it violated the Due Process Clause under the Fifth Amendment. Dkt. No. 22 at 2-3, 8-10; Dkt. No. 26. In particular, the Court determined that Respondents did not provide Min with the requisite due process when re-detaining Min on November 15, 2025. Dkt. No. 11 at 8-9. And Respondents' mootness arguments regarding the preliminary injunction were unfounded as there was no indication that Min would not be re-detained "without certain due process protections." Dkt. No. 16 at 4-5. Respondents have not filed an opposition to this Motion and thus, the Court deems them to have conceded that their position was not substantially justified. The Court also notes that numerous courts have held that re-detention without compliance with Due Process under the Fifth Amendment is not substantially justified. *See Gutierrez v. Barnhart*, 274 F.3d 1255, 1259 (9th Cir. 2001) (providing that where the government violates its own regulations, its conduct is not substantially justified); *Singh v. Gonzalez*, 502 F.3d 1128, 1129 (9th Cir. 2007) (same); *see also Doet v. Chestnut*, No. 1:25-cv-01372, 2026 WL 1459808, at *3 (E.D. Cal. May 25, 2026) (holding that respondents' position is not substantially justified where "[r]espondents continue to unreasonably discount the applicability of the Due Process Clause under the Fifth Amendment"); *Morales Jimenez v. Bostock*, No. 3:25-cv-00570, 2026 WL 1893763, at *1 (D. Oregon July 1, 2026) (same).

In addition, at no point did the Respondents ever even attempt to assert that the detention was lawful; they merely responded to the Application and the Petition by arguing that Min's release rendered the Petition moot.

For the foregoing reasons, Respondents' position in this litigation was not substantially justified.

**D. No Special Circumstances Exist to Render an Award Unjust.**

Min argues that there are no special circumstances in his case that would make an award of attorneys' fees unjust. Motion at 8-9. The burden of proving special circumstances rests with the government. *See, e.g.*, *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001); *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991).

Here, Respondents have not filed an opposition to Min's motion for attorney's fees and therefore have identified no special circumstances that would warrant denying an award. As such, given that this is the Respondents' burden, the court finds no special circumstances exist that would render an award of attorney's fees unjust.

## IV. Conclusion

For the foregoing reasons, the Court hereby GRANTS the Motion (Dkt. No. 30) and ORDERS as follows:

1. Min is awarded $47,681.06 in attorney fees.

IT IS SO ORDERED.

Dated: October 9, 2026

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge